UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LONGFELLOW INVESTMENT, LLC,<br><br>                        Plaintiff,<br><br>v.<br><br>CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, *a Delaware Corporation and subsidiary of The Cincinnati Insurance Companies*,<br><br>                        Defendant. | Civil No. 21-486 (JRT/TNL)<br><br>**MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Joseph M. Barnett and Brian N. Niemczyk, **HELLMUTH & JOHNSON**, 8050 West 78th Street, Edina, MN 55439, for plaintiff.

Anthony J. Kane, David Gordon Watson, and Jessica K. Allen, **PFEFFERLE KANE LLP**, 100 North Sixth Street, Suite 600A, Minneapolis, MN 55403, for defendant.

This case arises from an insurance dispute between Plaintiff, Longfellow Investment LLC ("Longfellow"), and its insurer, Cincinnati Specialty Underwriters Insurance Co. ("CSU"). Longfellow initiated this action asserting three claims: breach of contract, breach of the covenant of good faith, and for declaratory relief. CSU filed counterclaims, alleging that Longfellow breached its contract and seeking declaratory relief. Both parties move for summary judgment on the other party's claims.

First, because Minn. Stat. § 65A.01 does not apply to surplus line insurers like CSU, CSU was not barred from demanding an appraisal after Longfellow claimed a total loss to

its property and the Court will deny Longfellow's Motion for Partial Summary Judgement. Second, because Longfellow failed to establish that the appraisal award (the "Award") is invalid and there remains no genuine dispute of material facts, the Court will grant CSU's Motion for Summary Judgment in part and dismiss Longfellow's breach of contract and declaratory relief claims. Finally, because no argument was raised regarding Longfellow's breach of the covenant of good faith claim, the Court will deny CSU's Motion for Summary Judgment on that claim.

## BACKGROUND

### I.    FACTS

In 2019, Longfellow purchased a commercial property insurance policy for its property at 2716 E Lake St., Minneapolis, MN 55406 ("the Property") from CSU, a surplus line insurance provider. (Decl. of James M. Knoll ("Knoll Decl."), Exhibit A, at 1–2, 12, Dec. 27, 2021, Docket No. 20-1.) The policy covered, among other things, loss caused by fire, smoke, riot or civil commotion, vandalism, and firefighting efforts. (*Id.* at 18.) The policy provided that a total loss on the Property included a constructive loss, defined as loss that "exceeds the actual cash value of the Covered Property at the time of the loss." (*Id.* at 15.) The Property was valued at $1.5 million per the policy limits. (*Id.* at 13.) In the event of disagreement over the amount of loss, the policy provided that either party "may make a written demand for an appraisal of the loss" and that the appraisal panel's decision "will be binding." (*Id.* at 37.)

During the civil unrest following the murder of George Floyd in the spring of 2020, rioters set fire to a pawnshop that shared a common wall with the Property and also vandalized the Property. (Knoll Decl. ¶ 7.) The Property's exterior, windows, and roof were damaged in the course of the riot and in subsequent firefighting efforts. (*Id.*)

Longfellow hired Public Adjuster Paul Norcia to negotiate its insurance claim. (Declaration of Joseph Barnett ("Barnett Decl."), Ex. A ("Norcia Dep.") at 5:21–6:22, Dec. 27, 2021, Docket No. 21-1.) Norcia obtained estimates on repairs for the Property from two contractors. (*Id.* at 7:8–24.) Each estimate valued the repairs at more than $1.5 million, a constructive total loss under the terms of the insurance policy. (Knoll Decl. Ex. E, Ex. F.) Longfellow submitted a claim to CSU, stating that the Property was a total loss. (Decl. of Anthoney Kane ("Kane Decl."), Ex. 2 at 6, April 11, 2022, Docket No. 30-2.). CSU obtained a separate repair estimate, which valued repairs at less than $200,000. (*Id.*) CSU then demanded an appraisal pursuant to the insurance policy. (Norcia Dep. at 13:1–7.) Per the terms of the insurance policy, both parties selected representatives to serve as appraisers, and the representatives selected an umpire. (*Id.* at 14:8—12). Collectively, the representatives and the umpire formed the Appraisal Panel ("Panel"). (*Id.*)

Prior to the appraisal, the parties submitted documents to the Panel supporting their respective positions. Longfellow submitted the repair estimates it had obtained, an initial engineering report, and a rebuttal report. (Barnett Decl., Ex. B ("Baker Dep.") at 64:20–66:5.) The Panel only received Longfellow's rebuttal report on the day of the appraisal,

but reviewed it nonetheless. (*Id.* at 21:5—9; Norcia Dep. 76:16—19.). CSU submitted its repair estimate and an engineering report. (Baker Dep. 68:21—69:1, 64:4—19.)

Prior to the appraisal, CSU demanded by written letter that Longfellow's property manager, Hamoudi Sabri, not appear in person at the appraisal due to alleged threatening comments he had made to CSU personnel. (Norcia Dep. 15:6–16:12.) The record contains no indication that Longfellow objected to Sabri's absence from the proceedings either before or during the appraisal.

The appraisal took place at the Property on December 1, 2020. (Knoll Decl., Ex. G. at 67.) Longfellow's witnesses testified that the Property was a total loss due to damage to the shared wall between the Property and the adjoining pawnshop and that extensive damage to the roof required a complete roof replacement. (*Id.* 24:1–14.) In contrast, CSU's witnesses testified that the structure of the Property, and specifically the shared wall, was sound, that damage to the roof was limited, and that the Property was not a total loss. (Baker Dep. 20, 29, 69.)

The Panel and parties then inspected all aspects of the Property and observed that the pawnshop was in the midst of rebuilding and was fastening its new structure to the shared wall. (Norcia Dep. 16:23–17:3.) After the parties presented their arguments and the Panel completed its observations, the Panel noticed that the parties' estimates did not contain measurements for the Property's roof. (Baker Dep. 50:15–19.). The Panel used Google Maps' measuring tool to obtain the measurements. (*Id.* 50:22–52:7.) While

conducting its measurements with Google Maps, the Panel noted the Property's chimney, which Longfellow claimed was destroyed in the riots, was already destroyed in the satellite image taken prior to 2020. (*Id.*)

The Panel convened and subsequently concluded that CSU's estimate was closer to the actual amount of damages. (*Id.* 84:11—19.) Nonetheless, based on the information obtained throughout the appraisal, the Panel added certain additional amounts to the Award. (Knoll. Decl. Ex. G ("Appraisal Award"); Baker Dep. 31:20–38:8.) First, the Panel concluded, based in part on the fact that the pawnshop was fastening its new structure to it, that the common wall was not structurally damaged. (*Id.* 46:21–47:6; 50:22–52:7.) Second, the Panel concluded that Longfellow's expert was not confident that he was qualified to reach a conclusion regarding structural integrity of the building, because he stated that a structural engineer should review the structural soundness of the building and did not opine on the question himself. (*Id.* 47:19—23.) Therefore, the Panel based their Final Award on CSU's estimate. (Appraisal Award.)

In the end, the Panel issued an Award of $334,969.84 in total loss value, for an actual cash value of $282,343.61 after depreciation. (*Id*.)

## II.     PROCEDURAL HISTORY

After the Panel issued the Final Award, Longfellow initiated this action in state court, alleging that CSU breached its contract by failing to pay Longfellow the full amount for a total loss, that CSU breached its duty of good faith by presenting false testimony to

the Panel and by baring Sabri from testifying, and seeking a declaratory judgment invalidating the Award. (Notice of Removal, Ex. A, Compl., at 6–8, Feb. 22, 2021 Docket No. 1.) CSU removed the case to this Court. (Notice of Removal.) CSU then filed a counterclaim alleging that Longfellow had breached its contract and seeking declaratory judgment stating CSU satisfied it's contractual duties. (Ans. Mar. 3, 2021, Docket No. 6.) After engaging in discovery, Longfellow moved for partial summary judgment. (Pl.'s Mot. Sum. J., Dec. 27, 2021, Docket No. 17.) CSU filed a cross-motion for summary judgment. (Def.'s Mot. for Sum. J., April, 11, 2022, Docket No. 27.).

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific

facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

## II.      ANALYSIS

### A. LONGFELLOW'S MOTION FOR SUMMARY JUDGMENT

Longfellow moves for summary judgment, arguing that Minnesota law precluded CSU from seeking an appraisal from the Panel when Longfellow claimed a total loss.  Longfellow claims that Minnesota Statute § 65A.01 does not permit parties in an insurance dispute to seek an appraisal where they fail to agree on the cash value of repairs to a building damaged by fire where there is a total loss.  CSU responds that § 65A.01 does not apply to CSU since it is a surplus line insurer organized under Minn. Stat. § 60A.195–§60A.209—otherwise known as the Surplus Lines Insurance Act.

There are two commercial property coverage insurance markets in Minnesota: primarily, there is the licensed and authorized insurance providers who are required to participate in Minnesota Insurance Guaranty Association, which protects the insured in the event that the insurer is insolvent; alternatively, the "Surplus Lines Insurance Act permits certain licensees, who are specially regulated agents and brokers, to place insurance with out-of-state insurers not licensed and who do not have a Certificate of

Authority to write insurance in Minnesota." *Farmers and Merchants State Bank v. Bosshart*, 400 N.W.2d 739, 740 (Minn. 1987).

Surplus lines insurance is utilized where authorized insurance coverage cannot be obtained. In fact, if insurance can be obtained from a typical admitted insurer, one cannot obtain insurance from a surplus line insurer. Minn. Stat. § 60A.201 subd. 1. The "surplus lines market is a part of the insurance market for risks that licensed companies are unwilling to insure or only willing to insure at a very high premium, or with many exclusions, or with high deductibles, or with some combination of these traits." *Cascades Dev. Of Minn., LLC v. W. Bend Mut. Ins. Co.,* No. A12-2184, 2013 WL 2928150, at *1 FN 1 (Minn. Ct. App. June 17, 2013).

Minnesota Statute § 65A.01 establishes the "printed form of a policy of fire insurance". Minn. Stat. § 65A.01 subd. 1. The form lays out several requirements for traditional, authorized insurance policies that cover loss caused by fire, stipulating that if the insured and insurance provider fail to agree on the amount of loss, either party may demand an appraisal, "except in the case of total loss." Minn. Stat. § 65A.01 subd. 3.[1]

---

[1] The relevant portion provides:

> In case the insured and [the insurance provider], **except in case of total loss on buildings**, shall fail to agree as to the actual cash value or the amount of loss, then, on written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. . . The appraisers shall first select an umpire . . . then appraise the loss, stating separately actual value and loss for each item; and, failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of

However, the Surplus Lines Act stipulates that surplus line insurers are **not** bound by all the same insurance laws as traditional insurers, including "chapters 60 to 79."[2] Minn. Stat. 60A.197(b), (h).  Because CSU is a surplus line insurer, it is not bound by the requirements in § 65A.01.  Longfellow purchased a surplus line insurance policy with CSU and CSU has not violated the terms of the policy.[3]

Because Minn. Stat. § 65A.01 does not apply to CSU, it was not barred from demanding an appraisal of the Property and Longfellow is not entitled to judgment as a matter of law.  The Court will deny Longfellow's Motion for Partial Summary Judgment.

**B. CSU's Motion for Summary Judgment**

CSU seeks summary judgment on Longfellow's claims and argues that CSU and the Panel did not act inappropriately and that the Panel's conclusion was accurate and

---

any two when filed with [the insurance provider] shall determine the amount of actual value and loss.

Minn. Stat. § 65A.01 subd. 3 (Emphasis added).

[2] Minn. Stat. 60A.197(b) & (h) provide that: "forms used by eligible and ineligible surplus lines insurers . . . **shall not be subject to the insurance laws** ["chapters 60 to 79 inclusive"], except that a policy shall not use language misrepresenting "the true nature of the policy or class of policies."

[3] Longfellow contends that concluding that surplus lines insurers are not bound by § 65A.01's requirements contravenes the intent of the Minnesota Legislature.  In support of this proposition, Longfellow cites two Minnesota state cases that hold that § 65A.01 was intended to "secure uniformity in all contracts of fire insurance" and that § 65A.01 establishes "the only form of fire insurance contract which may lawfully be used in this state."  *Watson v. United Servs. Auto. Ass'n.*, 566 N.W.2d 683, 690 (Minn. 1997); *Heim v. Am. All. Ins. Co. of New York*, 180 N.W. 225, 227 (Minn. 1920).  Cf.  *Axis Surplus Ins. Co. V. Condor Corp.*, 19 F.4th 1062, 1063 (8th Cir. 2021).  However, these cases do not deal with surplus lines insurers and do not interpret the Surplus Lines Insurance Act.  Consequently, they do not alter the Court's analysis.

sufficient. Longfellow argues that the Panel's appraisal was inappropriate for three reasons: (1) the Panel limited Longfellow's witness testimony and evidence; (2) the Panel relied on their own observations and investigation instead of the evidence presented by the parties'; and (3) the Panel's appraisal was not rationally related to the repair estimates submitted by the parties.

Under Minnesota law, appraisal panel awards are presumed to be valid. *Cedar Bluff Townhome Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 857 N.W.2d 290, 296 (Minn. 2014); *McQuaid Market House Co v. Home Ins. Co.*, 180 N.W. 97, 98 (Minn. 1920) (stating that every presumption comes to the support of an award, and that the burden of proof rests on the challenging party to "establish the fraud or other ground relied upon by clear allegations and proof."). Nonetheless, parties to an insurance dispute have the "right to be heard and to present evidence" by an appraisal panel before they make their decision regarding the proper amount to award. *Dufresne v. Marine Ins. Co.*, 196 N.W. 560, 561 (Minn. 1923); *See also Rose Hill Villas Owners Ass'n v. Am. Family Mut. Ins. Co.*, No. 20-cv-2191, 2021 WL 5235070, at *8 (D. Minn. Nov. 10, 2021).

### 1. The Panel did not exclude "pertinent evidence" offered by Longfellow

Longfellow first argues that the Panel improperly limited the evidence it could present to the Panel and refused to consider some of the evidence it did submit to the Panel. Longfellow was prevented from calling a key witness, Hamoudi Sabri, because CSU refused to participate in the appraisal if Sabri was present or appeared at the property

-10-

during the appraisal. Sabri was "the witness with the best knowledge of the condition of the [Property] prior to the loss and could have testified about each and every item of damage observed by the Panel during their walk around inspection at the appraisal." (Pl. Resp., at 15, May 2, 2022, Docket No. 33.) Longfellow asserts that the witness it presented, an owner of the Property, did not have significant knowledge of the pre-loss condition of the Property and so was not a proper substitute for Sabri. Additionally, Longfellow states that Sabri could not have "effectively, and in real time, explained what portions of the building had pre-existing damage or post loss damage during the Panel's walk around inspection" if he had to appear virtually over Zoom or telephone instead of in person. (*Id*. at 16.)

The law is clear that appraisers cannot exclude "pertinent evidence offered by the parties." *American Central Ins., Co. v. District Court of Ramsey County*, 147 N.W. 242, 244 (Minn. 1914). However, even viewing the facts in a light most favorable to Longfellow, the Panel did not exclude "pertinent evidence" offered by Longfellow.

CSU requested that Sabri, the Property's manager, not be present during the Appraisal, or CSU would refuse to participate in the appraisal. Despite Sabri's apparent role as Longfellow's best witness, Longfellow did not object to Sabri's absence from the proceedings either before or during the Appraisal. Further, the specific language of CSU's letter provides that "Mr. Sabri not appear or be present **at the subject Property during the December 1 appraisal**." (Kane Decl. Ex 3) (emphasis added). The letter's language

indicates that CSU only meant that Sabri could not be present **in person** during the appraisal. Longfellow's assertion that Sabri could not have testified virtually due to the nature of his testimony is unavailing. Since the beginning of the COVID-19 pandemic, businesses, courts, and many other institutions have relied on virtual communication. Moreover, Longfellow presented no evidence that it raised any objection to CSU's demand either before or at the appraisal.[4]

Longfellow also contends that the Panel did not actually review all of the evidence Longfellow submitted and instead substituted that evidence with their own observations. However, the Panel considered initial and rebuttal reports submitted by Longfellow's expert, the expert testified at the appraisal, and the Panel received and reviewed Longfellow's repair estimates prior to issuing the Award. The Panel noted that even though they received one report the day of the appraisal, they still gave the report consideration. Thus, the Panel did not overlook evidence Longfellow presented. Because Longfellow was neither denied the right to be heard nor prevented from presenting evidence to the Panel, the Award is presumed valid.

---

[4] CSU states that it requested that Sabri not appear at the Property because threatening comments Sabri made to CSU personnel prior to the appraisal. Nonetheless, the Court notes its concern with CSU's behavior in demanding that one of Longfellow's witnesses not be present in person at the appraisal. Many other steps would have been more appropriate to ensure the safety and security of the proceeding short of handicapping Longfellow's testimony. While the Court finds that excluding Sabri from the appraisal did not constitute excluding pertinent evidence, the Court does not condone such an action.

### 2. The Panel did not inappropriately rely on its own investigations

Longfellow also argues that the Panel's Appraisal Award is invalid because the Panel improperly relied on its own investigation of the Property using Google Maps, personal observations, and opinions when fashioning the Award.

Appraisers may use their own judgment and experience in arriving at their decision so long as the interested parties are given notice and a reasonable opportunity to present evidence at an appraisal, and the appraisers do not disregard that evidence. *American Central Ins., Co. v. District Court of Ramsey County*, 147 N.W. 242, 243 (Minn. 1914); *Rose Hill Villas*, No. 20-cv-2191, 2021 WL 5235070 at *8.[5]

The undisputed record indicates that the Panel heard testimony from both parties, observed the premises, and relied on Google Maps because neither party's estimate included measurements for the Property's roof. The Panel was within its authority to use their own judgment and experience during the appraisal to supplement the parties' submissions where they were lacking.

---

[5] In arguing that the Panel improperly limited or disregarded Longfellow's witnesses and evidence, Longfellow relies primarily on two Minnesota Supreme Court cases: *Am. Cent. Ins. Co. v. Dist. Crt. Ramsey Cnty.*, 147 N.W. 242 (Minn. 1914) and *Schoenich v. Am. Ins.*, 109 Minn. 388 (Minn. 1910). However, these opinions are not controlling. As stated by a court in this district:
> In sum, both *American Century* and *Schoenich* focus on the requirement that interested parties be given notice and a reasonable opportunity to present evidence at an appraisal, and prohibit appraisers from basing an award on their personal knowledge to the exclusion of pertinent evidence offered by the parties. They do not, however, prohibit an appraiser using their experience as part of an appraisal.

*Rose Hill Villas*, 2021 WL 5235070, at *8.

Moreover, the Panel observed the pawnshop's repairs during the appraisal and CSU presented evidence to the Panel that supported CSU's position that the property was not a total loss. The Panel was permitted to rely on this information to determine the Award. Therefore, the Panel did not inappropriately rely on its own investigations, and the Court will not set aside the Award on that argument.

### 3. The Award is rationally related to CSU's estimate

Finally, Longfellow argues that, in relation to the parties' estimates, the Award was so irrational as to give rise to an inference of fraud. Longfellow points out that the Panel awarded Longfellow a greater amount than the estimate provided by CSU but still much less than the estimate supplied by Longfellow.

An appraisal panel's award may be invalidated where the award is so grossly inadequate as to justify a legitimate inference and finding of fraud. *Baldinger v. Camden Fire Ins. Assoc.*, 141 N.W. 104, 105 (Minn. 1913). Mere inadequacy is not a sufficient basis to set aside an award. *Id.* The party attacking an appraisal award bears the burden establishing why the award should be invalidated. *See generally Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748, 750 (Minn. 1984); *Rose Hill Villas*, 2021 WL 5235070, at *18.

Here, Longfellow has not met its burden establishing that the award is so grossly inadequate that it creates an inference of fraud. Although the award is significantly lower than the repair estimates provided by Longfellow, it is only slightly higher than CSU's

repair estimate. Longfellow does not point to any factual disputes and merely asserts that the Award is grossly inadequate in comparison to the estimates Longfellow obtained itself, which is not enough to set aside the award. Further, the Panel did not completely set aside CSU's estimate; the Award is clearly modeled on CSU's estimate with some additional value added where the Panel determined the estimate to be insufficient. Therefore, the Court will not find that the Award was so grossly deficient as to be fraudulent.

## CONCLUSION

In conclusion, Minn. Stat. § 65A.01 does not apply to CSU. Additionally, Longfellow failed to present evidence establishing that the Panel acted inappropriately. Therefore, the Court will grant Defendant's Motion for Summary Judgment, dismiss the breach of contract claim and claim for declaratory relief against CSU, and deny Longfellow's Motion for Partial Summary Judgment.[6]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[6] CSU moved for the Court to dismiss Longfellow's Complaint in its entirety. However, at no point in its arguments did CSU address Longfellow's claim for Breach of the Covenant of Good Faith. As such, the Court will not dismiss that claim.

1. Plaintiff's Motion for Partial Summary Judgment [Docket No. 17] is **DENIED**.

2. Defendant's Motion for Summary Judgment [Docket No. 27] is **GRANTED IN PART AND DENIED IN PART**:

    i. Defendant's Motion is **GRANTED** as to Counts I and II, and

    ii. **DENIED** as to Count III.

DATED: September 1, 2022  
at Minneapolis, Minnesota.

                                                                     JOHN R. TUNHEIM  
                                                                  United States District Judge